## Levi Parker *et al. versus* Sarah Parker *et al.*

Where land of which a husband died seised, was assigned for dower to his widow, by commissioners appointed by the Probate Court, the heir and the widow assenting to such assignment at the time when it was made, and the report of the commissioners was subsequently accepted· by the Probate Court, it was *held*, that the widow had a·defeasible freehold estate in the land, from the time of the assignment, which the acceptance of the report by the Probate Court, rendered absolute; and that after such assignment the widow was entitled to enter, and cut and carry away the growing crops sown by the heir previously to the assignment, although such entry was made previously·to the acceptance of the report.

In an action of trespass, the declaration contained two counts, one for breaking and entering a close with force and arms, and cutting down and carrying away sixteen stooks of rye, and the other for taking and carrying away sixteen stooks of other rye.· The defendant pleaded ; " as to the force and arms or any thing against the peace and also the whole trespass and all the·trespasses in the declaration mentioned, excepting the breaking and entering the close aforesaid and cutting down and carrying away sixteen stooks of rye then and there growing, she says she is not guilty thereof;" and the plea then proceeded to justify the breaking the close and carrying away sixteen stooks of rye, upon the ground that the close· was the defendant's soil and freehold. It was *held*, that the ·plaintiff was not entitled to judgment on the second count as upon a *nihil dicit*, the plea being a sufficient answer to the whole declaration.

TRESPASS *qu. cl. fr.* and *de bonis asportatis.* The declaration contained two counts, the one, for breaking and entering the close with force and arms, and cutting down and carrying away sixteen stooks of rye, and the other, for taking and carrying away sixteen stooks of other rye, &c. The trespass was alleged in the declaration, to have been committed on July 15, 1833. The writ was purchased on August 13, 1833.

The defendant, Sarah Parker, pleaded as follows :

" And the said Sarah Parker comes and defends the force and injury when, &c., and as to the force and arms or any thing against the peace, and also the whole trespass, and all the trespasses in the plaintiffs' declaration mentioned, excepting the breaking and entering the close aforesaid and cutting down and carrying away sixteen stooks of rye then and there growing, she says she is not guilty thereof in manner and form as the plaintiffs have complained against her ; and as to the breaking and entering the close aforesaid and cutting down and carrying away sixteen stooks of rye there growing, the said Sarah says, that the plaintiffs their action aforesaid against

her therefor ought not to have and maintain, because she says, that the close aforesaid in which the trespass aforesaid is supposed to be committed, at the time when, &c., was the close, soil and freehold of her the said defendant ; wherefore the said Sarah, at the time when, &c., broke and entered the said close, and cut and carried away the said sixteen stooks of rye there growing, which she lawfully might do, which is the same trespass, &c. ; and this she is ready to verify," &c.

It appeared that the defendant, Sarah Parker, was the widow of Levi Parker, senior, who died seised of the premises ; that Abel Jewett and two other persons were appointed, by the judge of probate, commissioners to set off her dower ; that in May 18, 1833, the *locus in quo* was set off to her for her dower by the commissioners ; that the plaintiff, Levi Parker, who was an heir of the deceased, and the widow, by their writing, in which it was stated that they were the only persons interested in the proceedings, gave their assent to the assignment at the time when it was made ; but that the report of the commissioners was not presented to the judge of probate, and accepted and recorded, until November 5, 1833.

The other defendants, as the servants of Sarah Parker, entered upon the premises and cut and carried away the rye in question, which had been sown by the plaintiffs before the assignment of the dower. The plaintiffs forbade their cutting the rye, one of them claiming it as their own property.

*Farley*, for the defendants, to the point, that the assignment of dower and the assent of the plaintiff, Levi Parker, thereto, gave the widow a right to enter the close, and to cut and carry away the rye, cited *Conant* v. *Little*, 1 Pick. 189 ; *Gibson* v. *Crehore*, 3 Pick. 475 ; *Sheafe* v. *O'Neil*, 9 Mass. R. 9 ; 2 Bac. Abr. *Dower*, D 2 ; Co. Litt. 35 *a*, 35 *b*, 38 *b* ; to the point, that the acceptance of the report of the commissioners by the Probate Court, related back to the time of the assignment, *Mansfield* v. *Pembroke*, 5 Pick. 449 ; and to the point, that as against the heir, the rye passed to the widow with the land, although it had been sown before the assignment, *Catlin* v. *Ware*, 9 Mass. R. 218.

*B. Russell*, for the plaintiffs. The soil and freehold was not in the widow because she was not actually seised at the

*Oct. 14.*

Parker
v.
Parker.

time of the commission of the trespass. She did not acquire the seisin, until after the report of the commissioners was accepted, and a decree passed confirming the assignment; for until then the report was open to objections, not only from the heirs and others, but from the judge of probate. *Sheafe* v. *O'Neil*, 9 Mass. R. 9, 13; *Thayer* v. *Thayer*, 7 Pick. 209; Stearns on Real Actions, 297, 298. The assignment could not become effectual by relation, because it rested in uncertainty till the report was accepted. It does not appear, that the widow had any possession, till the entry was made for the purpose of cutting the rye; and one of the plaintiffs on the ground declared that they claimed the rye.

The plaintiffs are entitled to judgment on the second count, the plea of soil and freehold being no answer to it. The declaration alleges, that the rye mentioned in that count was different from that referred to in the first count; and in fact it might have been different.

Jan. 23d,
1836.

PUTNAM J. delivered the opinion of the Court. We are to consider whether the close was the soil and freehold of Sarah Parker, at the time when she entered by her servants, and cut down and carried away the rye. The assignment of dower and assent to it on the part of Levi Parker and Sarah Parker, were before the alleged trespass, but the acceptance of the return by the Probate Court was after the supposed trespass. And the question is, whether by relation the soil and freehold was in Sarah, as her dower, at the time when the trespass is alleged to have been committed by her.

In the case of *Mansfield* v. *Pembroke*, 5 Pick. 449, it was held, that the wife had a seisin sufficient for the purpose of gaining a settlement, from the time of the *assignment* of dower; for though her estate was not indefeasible, yet the affirmance by the judge of probate related back to the time of the assignment. The dowress was therefore, under those circumstances, considered as having an estate of inheritance or freehold, from the time of the assignment. And this construction was adopted in a case where the parties to the suit were strangers to the proceedings; *a fortiori*, it seems to us, that it should be held to be the same between the widow and the heir, who both consented to the assignment. Upon the faith of that

assignment of the commissioners, and with the consent of the heir, the widow entered and took the profits from thenceforward ; and it is very clear to us, that the heir, the plaintiff, cannot be permitted to consider the dowress as a trespasser. She had then a defeasible freehold, which the subsequent affirmance of the Probate Court perfected. So that in legal contemplation it became and was her soil and freehold from the time of the assignment ; which was nearly two months before the supposed trespass. The doctrine of relation is, " where in consideration of law, two times, or other things, are considered so as if they were all one, and by this, the thing subsequent is said to take its effect by relation at the time preceding. As if A deliver a writing to B, to be delivered to C, as the deed of A, when C hath paid a sum of money. Now when the money is paid and the writing delivered, this shall be taken as the deed of A at the time when it was first delivered." Cunningham's Law Dict. *verb. Relation* ; Cowell's Law Dict. *verb. Relation.* So where a judgment is reversed by a writ of error, the plaintiff in error is restored to his possession and to the mesne profits from the time the erroneous judgment was given, until the judgment in the writ of error. In *Menvil's case*, 13 Co. R. 19, the husband who was seised, levied a fine with proclamations, and was outlawed for high treason and died. His children brought a writ of error, and obtained a judgment to reverse the attainder. The widow recovered her dower. And it was held that her right of dower accrued, after the reversal of the attainder, by reason of the seisin in fee of the husband, and the marriage before the fine levied. This case was decided upon the petition to the queen, indorsed by her, " Let right be done to the parties," as the manner is. The cause is then examined by the judicial tribunals, as if it were between subjects, and decided according to law. I cannot forbear the remark, that it is greatly to be regretted, that some analogous remedy is not found in our own country for the adjustment of the claims of individuals, as well against the government of the several States, as against the United States.

If a man leases land for years upon condition, that if he performs certain conditions, then he shall have a fee, there if he

Parker<br><i>v.</i><br>Parker.

performs the conditions he shall have the ee by the first delivery. Vin. Abr. *Relation*, *E.*

It is a rule of law, that where the certainty appeareth, as to what lands the widow shall have dower, she may enter without any new assignment, as where the dower was *ad ostium ecclesiæ*, or *ex assensu patris.* The freehold however is not in her until her entry. But where the certainty doth not appear, she shall have an assignment after the death of her husband. Co. Litt. 37 *b.* And where she has recovered a judgment for her dower, *she may enter immediately after the sheriff has set out her thirds, before the writ shall be returned.* Co. Litt. 37 *b, in notis* For the certainty as to what lands she should have for her dower, was apparent after it had been so set out by the sheriff. And where the like certainty appears by the assignment of the commissioners, under the authority of the Probate Court, by the assent of the heir as well as by her own assent, the same rule of the law should apply, that is, she may enter, although the return of the commissioners should not have been made.

It seems to us therefore to be clear, that the freehold estate was in Sarah Parker at the time when she entered as she has pleaded, and that the other defendants might justify their entry, &c., as the servants of Sarah. And as the heir consented to the assignment at the time when it was made, it is too late for him now to contend that he had not been duly notified of the prior proceedings. It has been contended, that the plaintiffs sowed the rye before the assignment, and are therefore entitled to have the crop as emblements. This point was otherwise settled in *Catlin* v. *Ware*, 9 Mass. R. 218. The dowress takes the land with the improvements. Park on Dower, 354 ; Dyer, 316 *a, pl.* 2.

It has been contended for the plaintiffs, that there are two counts, one for trespass *qu. claus. fregit*, and cutting down and carrying away sixteen stooks of rye, and the other, for taking and carrying away sixteen stooks of other rye, &c. ; and that the plea of soil and freehold, as pleaded, is only an answer to the first count ; and therefore that the plaintiffs are entitled to a judgment on the second count. If the plea purported to be an answer to only a part of the declaration, the plaintiffs

would be entitled to judgment by *nil dicit*, or the cause would be discontinued. Com. Dig. *Pleader, E* 1. *Vid.* 3 Wentw. Pl. for the form used, where the plaintiff takes judgment by *nil dicit* as to part. But *this* plea certainly purports to be an answer to the *whole* declaration, and if it does not contain a sufficient answer to the whole, the plaintiffs should have demurred. The words in the introductory part of the plea are, that the defendant, Sarah, comes and defends, &c., and as to the force and arms or any thing against the peace, and *also the whole trespass and all the trespasses in the declaration mentioned*, excepting the breaking and entering the close aforesaid and cutting down and carrying away sixteen stooks of rye then and there growing, she says she is not guilty thereof in manner and form as the plaintiffs complain against her. And the plea then goes on to justify the breaking and entering the close and the carrying away the sixteen stooks of rye, because the close was her soil and freehold.

The law supposes that every trespass is committed *vi et armis, contra pacem,* &c., and requires an answer or plea sufficient to cover the whole declaration. The defendant may deny the whole by the general issue. He may deny a part, and plead a justification for the residue ; or he may confess a part and plead to the residue. And the plaintiff is obliged to join the issue of *not guilty* as to the part denied, and must reply or demur to the matter pleaded in justification.

The words *with force and arms and against the peace, &c.,* were considered matter of substance, and the jury were required to find a verdict upon that issue upon those words, as well as upon the issue arising from the pleas of justification. The authorities however are contradictory upon the point. Com. Dig. *Pleader*, 3 *M* 7. By 16 and 17 *Car.* 2, *c.* 8, the defect is aided after verdict ; and by the 4 and 5 *Anne, c.* 16, it is aided upon general demurrer. And it was held in *Lawe* v. *King*, 1 Saund. 81, that those words in the declaration, *being matter of form*, did not require any answer, and that if the jury found for the defendant upon the special matter, they need not inquire as to the *vi et armis*. But if a matter of substance be denied in the introductory part of the plea, the jury must inquire and find a verdict upon the issue joined upon

that part of the plea, as well as upon the issue arising from the special matter pleaded as to the residue of the trespass set forth in the declaration. *Vid.* Co. Ent. 643, for the form, where the venire issues for the jury as well to try that issue, [viz., as to the force and arms and all the trespass aforesaid excepting, &c.] as the other issue above joined, viz., upon the plea of justification as to the residue of the trespass.

So in *Kimp* v. *Crews*, Ld. Raymond's Entries, 195, the case was trespass *qu. claus.* and taking three cows. One defendant pleaded *not guilty* as to the whole. The others pleaded *not guilty* as to the force and arms and the breaking and entering the close, and justified as to the residue, viz. the taking of the three cows. The jury found that the defendant who pleaded *not guilty* to the whole was guilty ; and as to the first issue joined by the other defendants, as to coming with force and arms, *and also the breaking and entering of the close*, that they were guilty. And as to the *other* issue joined by the other defendants (upon the matter pleaded as to the residue) they found, &c. &c. *Vid.* 10 Wentw. 396.

And this is not double pleading. For a defendant may well plead *not guilty* as to part, whether it be of form only, or of substance, and justify specially as to the residue. If the matter denied be merely matter of form, the jury need not inquire concerning it ; but if it be of form and substance also, the jury must inquire and find the truth. The whole declaration is to be answered. The defendant may confess a part, and plead as to the rest. *Penton* v. *Robart*, 2 East, 88. That was trespass *qua. claus.*, and for removing a building. The defendant confessed the breaking and entering, &c., but justified as to the residue, viz. removing the building. And the plaintiff had judgment for one shilling for the breaking, &c. ; and the defendant had judgment for the residue. *Vid.* 2 Chit. Plead. (ed. of N. Y. 1809,) 519, *in notis.* 2 Lill. Ent. 475 ; plene administravit excepting, &c. &c. So in *account*, the defendant may plead that he was not bailiff of the house, &c., and that he accounted for the goods. Rast. *Account, pl.* 4. It is not necessary, however, to multiply citations upon this matter. The declaration in the case before us consisted of two counts. We all think that the plea is a sufficient answer to the whole decla

ration. It is a denial of all, excepting of the part justified. If the defendants had taken away other sixteen stooks of rye than those which were set forth in the justification as to the residue, &c. it would have been competent for the plaintiffs, under the issue of not guilty of all the matters set forth in the introductory part of the plea, to have proved that fact. But there is nothing contained in the report to show that there were any other stooks of rye taken away than those contained in the justification as to the residue of the trespass.

We need not discuss the objection made by plaintiffs' counsel as to the leave to plead double ; for no other plea was necessary.

*Judgment for the defendants.*